UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JACQUELINE WASHINGTON | CIVIL ACTION NO. 23-1623 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BROOKSHIRE GROCERY CO | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 36) filed by Defendants Brookshire Grocery Co. ("Brookshire") and Travelers Indemnity Company of Connecticut ("Travelers Indemnity") (collectively "Defendants"). Defendants seek dismissal with prejudice of Plaintiff Jacqueline Washington's ("Washington") claims, which arise out of an alleged slip-and-fall inside Brookshire. See Record Document 36. Defendants maintain Washington cannot satisfy her requisite burden of proof under the Louisiana Merchant Liability Statute ("LMLS"). See Record Document 36-2 at 5. Washington opposes the motion, arguing there are unresolved questions of fact and law as to constructive notice. See Record Document 41. For the reasons set forth below, Defendants' motion is **DENIED**.

**BACKGROUND**

This lawsuit arises out of an alleged slip-and-fall that occurred in a Brookshire grocery store on December 9, 2022. See Record Document 1-1 at 2. Washington alleges that while she was a patron at the grocery store, she made a right turn into the produce aisle and slipped on a grape tomato. See Record Document 36-3 at 59, 61-62. The slip-and-fall was captured on surveillance video. See Record Document 37. The surveillance footage submitted to the Court begins approximately one hour and twenty-two minutes

before Washington's fall. See id. After the fall, store employees searched for an open container of grape tomatoes, but did not find an open container. See Record Document 36-4 at 30-31. Brett Holsomback ("Holsomback"), the Brookshire assistant store manager, also took two photographs of the scene. See id. at 24. One photograph shows one squished tomato on the ground. See Record Document 36-3 at 125. The other photo shows seven whole grape tomatoes on the floor directly in front of the grape tomato bin. See id. at 126. Washington does not know how the grape tomatoes initially came to be on the ground, nor does she know how long the grape tomatoes were on the ground before her fall. See id. at 67-68.

On October 31, 2023, Washington filed a Petition for Damages in the 42nd Judicial District Court for the Parish of Desoto, State of Louisiana. See Record Document 1-1. In her Petition for Damages, Washington sought damages for a head injury and pain, neck injury and pain, and right knee injury and pain, which she claims she suffered because of her slip-and-fall. See id. at 3. Washington claims Brookshire failed to keep the floors clear and in a safe condition, and knew or should have known of the hazardous condition that allegedly caused her slip-and-fall. See id. at 4. On November 15, 2023, Brookshire removed the case to federal court pursuant to diversity jurisdiction. See Record Document 1. After removal, Washington amended her complaint to add Travelers Indemnity as a defendant. See Record Document 20.

In Defendants' Motion for Summary Judgment, Defendants contend that Washington fails to prove actual or constructive notice as required under the LMLS. See Record Document 36-2 at 5. Washington opposes the motion, arguing there is a genuine dispute of material fact as to constructive notice. See Record Document 41 at 5-6. More

specifically, Washington argues that while there is no direct evidence of the length of time the grape tomatoes were on the floor, she can satisfy her burden through circumstantial evidence. See id. at 6. Washington points to Holsomback's deposition testimony that because the grape tomatoes are packaged in self-contained clamshell-like containers, for a grape tomato to be on the ground, an individual would have had to open the container. See id. She points to this fact, and the fact that the surveillance footage shows that nobody shopped in the grape tomato section of the grocery store for approximately one hour and twenty-two minutes prior to her fall. See id. Washington claims this evidence is sufficient to overcome summary judgment. See id. at 7.

Defendants replied, asserting that Washington has failed to establish the temporal element required under the LMLS. See Record Document 42 at 2. Defendants submit that in the surveillance footage, the grape tomatoes and the area in front of them are hidden. The grape tomatoes that were allegedly on the floor are not visible. See id. Further, a woman shopped in front of the tomatoes close to the time of Washington's fall. Defendants contend that because her shopping is not entirely visible, that customer could have spilled the grape tomatoes on the ground. See id. at 3. Brookshire argues that any alternative conclusions drawn from the video or otherwise are speculative. See id. at 3-4.

## LAW AND ANALYSIS

### I.      Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court

should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex Corp., 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party." Id.

## II.   Louisiana Merchant Liability Statute

In a diversity case such as this one, federal courts apply substantive state law. See Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Accordingly, liability in this case is governed by the LMLS, La. R.S. 9:2800.6. Section 2800.6 imposes a duty of care on a merchant to those lawfully on its premises "to keep the premises free of any hazardous conditions which

reasonably might give rise to damage." La. R.S. 9:2800.6(A). When a negligence claim[1] is brought against a merchant based on injuries sustained in a fall caused by a condition of the merchant's premises, a plaintiff bears the burden of providing the existence of a hazardous condition and that:

1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

2) The merchant either created or had actual or constructive notice of the condition which cause the damage, prior to the occurrence.

3) The merchant failed to exercise reasonable care.

La. R.S. 9:2800.6(B).

With respect to the second element, the LMLS defines constructive notice to mean that the plaintiff "has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). The jurisprudence has explained that constructive notice includes a temporal element, which requires the plaintiff to prove the condition existed for "some period of time" prior to the fall. See White, 699 So. 2d at 1084. "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period." Id. "Importantly, on summary judgment, while [plaintiff] must show the condition existed for some period of time before her fall, 'whether the period of time that a condition existed was sufficient to provide a merchant with constructive notice is a fact

---

[1] "In Louisiana, a standard negligence claim consists of five elements: (1) a duty of care; (2) a breach of that duty; (3) cause in fact (4) legal cause; and (5) damages." Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th Cir. 2024) (citing Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La. 3/10/06), 923 So. 2d 627, 633).

5

question that must be submitted to the jury.'" Flowers v. Wal-Mart Inc., 79 F.4th 449, 453 (5th Cir. 2023) (quoting Bagley v. Albertsons, Inc., 492 F.3d 328, 331 (5th Cir. 2007)) (alteration omitted).

Importantly, a plaintiff bears the burden of proof as to each of the three LMLS elements. In fact, "[t]he burden of proof does not shift to the defendant at any point and failure to prove any one of these elements negates a plaintiff's cause of action." Melancon v. Popeye's Famous Fried Chicken, 2010-1109, p. 3 (La. App. 3 Cir. 3/16/11); 59 So. 3d 513, 515 (citing White v. Wal-Mart Stores, Inc., 97-0393 (La. 9/9/97); 699 So. 2d 1081); Ferrant v. Lowe's Home Centers, Inc., 494 F. App'x 458, 460 (5th Cir. 2012).

### III. Analysis

The parties' briefings focus on the second element of the LMLS—specifically, whether Brookshire had constructive notice of the condition. Brookshire asserts in its Motion for Summary Judgment that Washington cannot carry her burden of proof because she failed to identify any positive evidence that Brookshire caused or had constructive notice of the condition, meaning she cannot satisfy the temporal requirement. See Record Document 36-2 at 5. In response, Washington contends she has satisfied the temporal element of constructive notice with an array of circumstantial evidence, including the deposition testimony of Washington and Holsomback. See Record Document 41 at 6.

After a thorough review of the summary judgment record, including depositions, security footage, and applicable law, the Court finds summary judgment improper. While Washington cannot personally explain where the tomatoes came from nor how long they were on the ground, she presents sufficient circumstantial evidence to carry her burden. Washington presents testimony from Holsomback that a tomato could only land on the

ground if a container of grape tomatoes was opened, and that though the employees searched for an open container after Washington's fall, they did not find one. See id. Washington presents her own testimony that nobody was in the aisle when she walked into and through the aisle. See id. Most importantly, she presents the surveillance footage, which shows that in the one hour and twenty-two minutes prior to her fall, no customer opened or otherwise manipulated a package of grape tomatoes. See id.

A non-movant can overcome summary judgment on the issue of constructive notice by introducing evidence that raises a "reasonable inference" that the condition existed for some time. Bagley, 492 F.3d at 331. This showing can be made through direct or circumstantial evidence. See Fountain v. Wal-Mart Stores, Inc., 2019-669, p. 6 (La. App. 3 Cir. 3/18/20), 297 So. 3d 100, 106. In Bagley, the Fifth Circuit held that because the substance plaintiff slipped on "covered a significant area," it was reasonable to infer that the liquid leaked from another customer's cart. 492 F.3d at 331. Based on that inference, and the fact that the aisle was empty when plaintiff entered, there was sufficient circumstantial evidence to "imply[] the passage of 'some period of time' sufficient to survive summary judgment. See id.

Again in Sheffie v. Wal-Mart Louisiana LLC, 13-792 (La. App. 5 Cir. 2/26/14), 134 So. 3d 80, writ denied, 2014-0881 (La. 6/20/14), 141 So. 3d 813, plaintiff's satisfaction of the temporal requirement of constructive notice was in dispute. Defendant argued it was entitled to summary judgment because plaintiff failed to present positive evidence that defendant had constructive notice of water on the floor. See id. at 82, 84. The plaintiff presented a twenty-two-minute surveillance video showing that no liquid was spilled at any point in the twenty-two minutes before her fall. See id. at 84. The video also showed

7

that several employees walked by the area and failed to look for hazards as they were trained to do. Id. The Court found that the video recording and other circumstantial evidence were sufficient to create a genuine dispute of material fact. Id.

Washington presents more than mere "speculation, improbable inferences, or unsubstantiated assertions" to support her claim. See Jones v. United States, 936 F.3d 318, 321 (5th Cir. 2019). Holsomback's testimony and photos of the grape tomatoes show that the grape tomatoes came in a "clamshell"-like enclosure with a secured top and bottom. See Record Document 36-4 at 25-27, 88. The Court agrees with Holsomback's inference that, based on the evidence, a grape tomato container would have had to be opened or otherwise manipulated for a grape tomato to land on the ground. See id. at 28. The one hour and twenty-two minute surveillance video shows that nobody opened or spilled a grape tomato container in the one hour and twenty-two minutes before her fall. See Record Document 37.

The Court notes that Washington's contentions that nobody shopped in the grape tomato bin during the entirety of the security footage is not wholly accurate. At 10:49:41, approximately three minutes before Washington's alleged fall, a customer retrieves a produce item out of a bin near the grape tomatoes. See Record Document 37. Based on Holsomback's testimony and a close review of the surveillance video, it is unclear whether the customer picks up a grape tomato container. See Record Document 36-4 at 52. However, the customer clearly does not open or otherwise manipulate the produce item retrieved. At 10:40:06, approximately twelve minutes before Washington's alleged fall, a store employee reaches across the back of the grape tomato bin and picks up a container of grape tomatoes and carries it away with one hand on the bottom and one hand on the

8

top of the container. See Record Document 37. This employee does not open or otherwise manipulate the grape tomato container.

The surveillance video also shows a small, round object on the floor, which appears to the bottom right of the aisle containing grape tomatoes. See id. This object is present from the beginning of the video until the time Washington falls. At various times throughout the video, the object is moved across the floor when customers walk by the object. See, e.g., id. at 09:42:09, 09:47:26, 10:21:14, 10:33:09, 10:44:57, 10:48:20. It is unclear whether this object is a grape tomato. However, the appearance of an object of its shape and location corroborates Washington's inference that because nobody opened a grape tomato container during the one hour and twenty-two minutes of surveillance footage, the container was likely opened sometime before the footage began.

Defendants cite Flowers v. Walmart Stores Inc., No. 21-0904, 2022 WL 1294546 (W.D. La. Apr. 29, 2022) in support of their position that Washington cannot carry her burden of proof. In Flowers, the district court granted summary judgment because plaintiff "admitted that she did not know how long the substance was on the floor, and . . . produced no third-party witness or circumstantial evidence that would suggest how long it had been there." Id. at 6. But Flowers was reversed on appeal. On appeal, the Fifth Circuit found sufficient evidence that the puddle plaintiff slipped on had been there for "some time." See Flowers v. Wal-Mart Inc., 79 F.4th 449, 453 (5th Cir. 2023). The Flowers plaintiff presented evidence that on the day of the fall, it was raining outside, another witness stated she slipped on the water, and the assistant manager's testimony that the area was heavily trafficked and the water "likely dripped from a shopping basket." Id. The

plaintiff also presented evidence that she previously saw the puddle and told both her boyfriend and a Wal-Mart employee about the puddle. See id.

Defendants contend that like the Flowers plaintiff, Washington admitted she did not know how long the substance was on the floor or how it landed there. See Record Document 36-2 at 5. Defendants also characterize Holsomback's testimony about the surveillance video as speculative. See id. at 15. However, as the appellate court found in Flowers, this Court finds sufficient circumstantial evidence to create a fact issue regarding whether the grape tomato was on the ground for "some time" prior to Washington's fall. The inference does not rely solely on Holsomback's testimony about the surveillance video but also on the Court's own review of the footage. Further, to the extent that Holsomback testified as to how a tomato would have landed on the ground, the Court is persuaded that his inference is reasonable. Just as one can reasonably infer that on a rainy day, a puddle on the ground likely came from a shopping basket, one can reasonably infer that a grape tomato sitting on the floor next to rows of boxes of such tomatoes in secured, clamshell-like containers could only have landed on the ground if one of those containers was opened. See Flowers, 79 F.4th at 453.

In sum, Washington's evidence provides more than mere speculation. The parties do not dispute that Washington slipped on a grape tomato on the floor at the store. While Defendants contend Washington presents no positive evidence, it is reasonable to infer that the tomato was present for at least one hour and twenty-two minutes because it could only have landed on the floor through some manipulation of one of the grape tomato containers. There was no manipulation that occurred during that time. Additionally, the presence of what appears to be another grape tomato on the floor near the aisle where

Washington fell, which exists from the beginning of the surveillance video, supports the inference that the grape tomato container was opened prior to the start of the video. Washington "has presented enough evidence to create a genuine issue of material fact that the period of time the [hazard] existed was sufficient to place the Defendants on notice of its existence." See Flowers, 79 F.4th at 454-55. Whether that time is "actually sufficient" to put Brookshire on notice is a question of fact to be addressed and resolved at trial. See id.

## CONCLUSION

Based on the foregoing analysis, the Court finds there is a genuine dispute of material fact as to whether Brookshire had constructive notice of the hazard. Accordingly, Defendants' Motion for Summary Judgment (Record Document 36) shall be **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 3rd day of February, 2025.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT